UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN PAIN MANAGEMENT
PLLC,

    Plaintiff,

vs.

ENTERPRISE LEASING COMPANY
OF DETROIT LLC,

    Defendant.
_____/

Civil Action No.
20-cv-10090

HON. MARK A. GOLDSMITH

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 17)

Andre Gilmore was allegedly injured during a car accident that occurred on November 18, 2018. Gilmore's healthcare provider, Plaintiff Michigan Pain Management, PLLC, filed this lawsuit against Defendant Enterprise Leasing Company of Detroit LLC, seeking reimbursement of no-fault personal protection insurance (PIP) benefits for Gilmore's accident-related injuries. This matter is now before the Court on Enterprise's motion for summary judgment (Dkt. 17). Enterprise argues that Michigan Pain solicited Gilmore and, therefore, is precluded from recovering PIP benefits. For the reasons that follow, the Court denies Enterprise's motion.[1]

---

[1] Enterprise's motion for summary judgment has been fully briefed. Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

1

# I. BACKGROUND

To establish facts relevant to this motion, Enterprise relies on Gilmore's deposition testimony from another lawsuit and a recorded statement he gave to his insurer in support of his PIP claim.[2] After being injured in the car accident, Gilmore was taken to the emergency room of the Ascension St. John Hospital in Detroit, Michigan. Gilmore Dep. at 58 (Dkt. 17-3). Once Gilmore was discharged from the hospital, he went outside to wait for his girlfriend to pick him up. Id. at 61. As Gilmore was waiting for his girlfriend, an unidentified man approached Gilmore and gave him a flyer with information about Michigan Pain. Id. at 65–66. The man told Gilmore to "check them out." Id. at 66. Gilmore took the man's advice and called Michigan Pain about one week later. Id. at 66–67. Michigan Pain sent a van to transport Gilmore to his first appointment. Id. at 70. Gilmore began treatment with Michigan Pain on December 28, 2018. Claimant Records at PageID.376 (Dkt. 17-4). Gilmore's treatment included injections for pain, neuromuscular stimulation, radiofrequency ablations, and periodic outpatient visits, culminating in a lumbar discogram and lumbar decompression procedure performed on September 1, 2020. Payment Ledger (Dkt. 17-5). Michigan Pain treated Gilmore for over one year and eight months, resulting in the accrual of a medical bill totaling nearly $300,000.00. Id.

According to a statement by Gilmore, at some point after the accident, he received a call from a therapy provider that arranged transportation to bring him to a physical therapy appointment. Gilmore Statement at 9–10 (Dkt. 17-6). Gilmore did not identify the therapy provider by name in his statement. However, the therapy provider appears to be a different healthcare entity than Michigan Pain known as "Therapeutic Care." A bill from Therapeutic Care

---

[2] For the reasons discussed below, Gilbert's deposition is inadmissible and will not be considered in resolving the instant motion for summary judgment.

shows that Gilmore attended six therapy session from November 2018 to January 2019. Therapeutic Care Records (Dkt. 17-7).

## II. STANDARD OF DECISION

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Horton v. Potter, 369 F.3d 906, 909 (6th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

## III. ANALYSIS

Under Michigan's no-fault act, an insurer "is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." Mich. Comp. Laws § 500.3105(1). PIP benefits are payable for "[a]llowable expenses" consisting of "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a). In the case of healthcare providers, PIP benefits are payable for reasonable expenses of treatment that is lawfully rendered to "an injured person for an accidental bodily injury

covered by personal protection insurance." Mich. Comp. Laws § 500.3157. The no-fault act also provides a list of fraudulent behavior that bars a claim for no-fault benefits. See Mich. Comp. Laws §§ 500.3173a, 500.4503

Enterprise argues that Michigan Pain directly solicited of Gilmore in violation of Mich. Comp. Laws § 750.410b and, therefore, is precluded from recovering PIP benefits. Section 750.410b prohibits a person from intentionally and directly soliciting anyone who the person knows has sustained injuries as a result of a motor vehicle accident, for 30 days following the accident. See Mich. Comp. Laws § 750.410b. Enterprise contends that a violation of this subsection precludes recovery of PIP benefits because § 500.4503, which lists fraudulent behaviors that bar recovery, "intends that a violation of MCL 750.410(b) will result in a bar to a no-fault action." Mot. for Summ. J. at 17.

There are several problems with Enterprise's argument. First, Enterprise has not put forth any admissible evidence to support its position that Michigan Pain directly solicited Gilmore in violation of § 750.410b. As Michigan Pain points out, Enterprise primarily bases its claim of solicitation on Gilmore's deposition, which was taken in a separate case brought by Gilmore against Enterprise in state court for distinct PIP benefits. Michigan Pain was not given notice of the deposition. Under Federal Rule of Civil Procedure 32, a deposition generally cannot be used against a party if the party was not present or represented at the taking of the deposition or did not have reasonable notice of it. Fed. R. Civ. P. 32(a)(1)(A). Under such circumstances, a deposition can only be used: (i) for impeachment purposes; (ii) if the deponent was the party or its agent; (iii) if the deponent is unavailable; (iv) in a later action involving the same subject matter between the same parties, or their representatives or successors in interest; or (v) as permitted by the Federal Rules of Evidence. See Fed. R. Civ. P. 32(a)(1)(B)–(C), (a)(2)–(8). Here, (i) Enterprise: does not

4

seek to use Gilmore's deposition for impeachment purposes; (ii) Gilmore, the deponent, is not a party (or an agent of a party) in this action; (iii) Enterprise has not shown that Gilmore is unavailable; and (iv) this action does not involve the same parties or their representatives or successors in interests as the parties to the action in which Gilmore's deposition was taken. Nor does Gilmore's deposition have a permitted use under the Federal Rules of Evidence. To the contrary, under Federal Rule of Evidence 801, Gilmore's deposition is hearsay evidence, which cannot be considered on a motion for summary judgment. Wiley v. United States, 20 F.3d 222, 225–226 (6th Cir. 1994).

Second, even if Gilmore's deposition could be considered, it does not establish that Michigan Pain violated § 750.410b. Under § 750.410b, "[a] person shall not intentionally contact any individual that the person knows has sustained a personal injury as a direct result of a motor vehicle accident, or an immediate family member of that individual, with a direct solicitation to provide a service until the expiration of 30 days after the date of that motor vehicle accident." Gilmore's testimony does not establish that the unidentified man who handed him a flyer about Michigan Pain did so "with a direct solicitation to provide a service," as opposed to a permissible purpose such as broadly advertising Michigan Pain's medical services. In addition, Gilmore's testimony does not establish that either the unidentified man or Michigan Pain had any "knowledge or belief" that he had "sustained a personal injury as a direct result of a motor vehicle accident."

Gilmore's statement likewise does not establish that Michigan Pain violated § 750.410b. Enterprise submits the statement merely to show that a therapist called Gilmore sometime after the accident. However, Enterprise does not establish that the caller was someone employed by Michigan Pain. To the contrary, Enterprise suggests that the call was placed by a different company, Therapeutic Care, and notes that a bill from Therapeutic Care "corresponds" with the

5

therapy that Gilmore received. Enterprise Statement of Material Facts ¶ 5 (citing Therapeutic Care Bill). Although Enterprise speculates that "depositions or subsequent discovery [could] reveal[] a connection between Plaintiff and Therapeutic Care," id. ¶ 7, Enterprise submits no evidence to support this theory.

Third, even if Enterprise had shown a violation of § 750.410b, its argument that such a violation precludes recovery of PIP benefits is foreclosed by Richardson v. Allstate Ins. Co., 938 N.W.2d 749 (Mich. Ct. App. 2019). There, the Michigan Court of Appeals clearly held that a violation of § 750.410b does not bar recovery of PIP benefits. As the Richardson court explained, "[i]f the Legislature intended a violation of MCL 750.410 to be a bar to a no-fault action, it could have added it to the list of fraudulent conduct within MCL 500.3173a and MCL 500.4503. It, however, chose not to do so." Id. at 752.

Enterprise argues that Richardson is distinguishable because the plaintiff in that case was an attorney who did "nothing wrong from a solicitation perspective." Def. Supp. Br. at 11 (Dkt. 24). The problem with this argument is that it assumes that Michigan Pain directly solicited Gilmore. For the reasons discussed above, Enterprise fails to prove up this assumption.

Enterprise also argues that Richardson actually supports its position that Michigan Pain cannot recover PIP benefits because Richardson held that under § 500.3157, a healthcare provider cannot recover PIP benefits for treatment unlawfully rendered. According to Enterprise, Richardson compels the conclusion that Michigan Pain's treatment of Gilmore is rendered unlawful by Michigan Pain's solicitation of Gilmore. See Def. Supp. Br. at 15. This is an inaccurate reading of Richardson's interpretation of § 500.3157. Section 500.3157 permits healthcare providers to recover PIP benefits for "lawfully rendering treatment" and, consequently, healthcare providers cannot recover benefits for treatment that is unlawfully rendered. Miller v.

Allstate Ins. Co., 739 N.W.2d 675, 679 (Mich. Ct. App. 2007). Richardson explained that treatment is unlawfully rendered if the "treatment itself," i.e., the "act of actually engaging in the performance of services," is performed in an unlawful manner. 938 N.W.2d at 754 (punctuation modified). Consequently, issues such as the possible existence of corporate defects irrelevant to treatment. Id. Solicitation is, clearly, not treatment. Rather, like possible issues concerning corporate formation, possible issues concerning solicitation are irrelevant to treatment. As a result, under Richardson, any possible issues with Michigan Pain's solicitation of Gilmore do not render its treatment of him unlawful.

Enterprise argues that Richardson supports its position for another reason. Richardson suggested that the common law's general "wrongful conduct" rule could bar a plaintiff's action for recovery of PIP benefits if the plaintiff had engaged in unlawful solicitation. Id. at 753. The wrongful conduct rule states that a plaintiff cannot maintain an action if, in order to establish its cause of action, it must rely on an illegal act to which he is a party. Orzel v. Scott Drug Co., 537 N.W.2d 208, 212 (Mich. 1995). Enterprise contends that "the wrongful-conduct rule DOES [sic] have an application to these proceedings, because that rule does apply when a plaintiff engages in the wrongful conduct." Def. Supp. Br. at 17. Again, this argument presupposes that Michigan Pain engaged in unlawful solicitation. Without proof to corroborate this assumption, Enterprise fails to prove that the wrongful conduct rule bars Michigan Pain from recovering PIP benefits.

Aside from Richardson, Enterprise relies on Bahri v. IDS Property Casualty Insurance Co., 864 N.W.2d 609 (Mich. Ct. App. 2014) for the proposition that a single act of fraud in a claim for PIP benefits can preclude an entire claim. However, Bahri involved a plaintiff who unquestionably defrauded her insurer. Id. at 612-613 (affirming grant of summary judgment based on fraud because plaintiff sought recoupment for services that pre-dated the alleged accident and also

7

claimed to need replacement services when video surveillance demonstrated that she did not have the limitations she claimed). Here, Enterprise has done nothing to prove, much less establish as a matter of law, that Michigan Pain did anything fraudulent.

## IV. CONCLUSION

For the foregoing reasons, Enterprise has not carried its burden of showing that it is entitled to judgment as a matter of law. The Court, therefore, denies Enterprise's motion for summary judgment (Dkt. 17).

SO ORDERED.

Dated: July 6, 2021　　　　　　　　　　　　　　s/Mark A. Goldsmith
　Detroit, Michigan　　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge